JEROME F. MANNING vs. ELISHA P. SPRAGUE.

Middlesex.    March 13, 1888. — November 28, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Attorney at Law — Agreement to prosecute Alabama Claim — Champerty.*

An agreement made here between an attorney at law and his client for the prose-
    cution of a claim, growing out of the destruction of property by an insurgent
    cruiser, before the Court of Commissioners of Alabama Claims, recited that the
    attorney in return for " certain expenses and services " was to receive " an amount
    of money equal to nine per centum of any sum " that might be awarded. *Held,*
    that the agreement was not unlawful and void for champerty.

CONTRACT for breach of an agreement to employ the plaintiff,
an attorney at law, to prosecute a claim before the Court of Com-
missioners of Alabama Claims.    At the trial in the Superior
Court, without a jury, before *Pitman,* J., the following facts
were admitted or appeared in evidence.

On June 21, 1882, the defendant, at the plaintiff's office in
Boston, executed a power of attorney authorizing him to prose-
cute a claim for damages occasioned to the defendant by the
destruction of the ship Marshall by Confederate cruisers, and
" to receive whatever may be awarded on said claim, or paid on
account thereof, and give in my name proper acquittances there-
for, and to do any other lawful act that may be necessary to
secure the payment of the said claims, or any part thereof."
At the same time, and as part of the same transaction, the de-
fendant signed the agreement in question, which recited that the
defendant promised and agreed " to allow and pay to Jerome F.
Manning, or his order, executors, administrators, or assigns, an
amount of money equal to nine (9) per centum of any sum or
sums of money awarded, decreed, and paid " by the government
of the United States, or of any tribunal thereby authorized, on
account of such claim, and concluded as follows: " This is in
consideration of certain expenses and services by the said J. F.
Manning, or his order, to which we hereby bind ourselves, our
executors, administrators, and assigns.    No payment is due and
payable to the said J. F. Manning, his order, executors, admin-
istrators, or assigns, until the amount is awarded and decreed to

me, on said claim or claims, by the said government, or on its order or account; and this payment, when due and payable to said attorney, is made a first lien on the award and decree therein."

After the performance of certain preliminary services by the plaintiff, in pursuance of the agreement, the defendant refused to sign a petition, prepared by the plaintiff, to the Court of Commissioners of Alabama Claims, and notified the plaintiff that he had employed other attorneys to prosecute the claim. Subsequently such attorneys filed a petition on behalf of the defendant for such damages in that court, and an award was made to the defendant for a considerable sum.

The judge refused to rule, as requested by the defendant, that the agreement was champertous, but ruled that it was valid and binding; and found for the plaintiff. The defendant alleged exceptions.

*C. T. Russell, Jr.*, for the defendant.

*C. Cowley*, for the plaintiff.

DEVENS, J. The only question raised by the bill of exceptions, as conceded by the defendant in his brief, is whether the executory contract upon which the plaintiff depends was champertous and illegal.

The original act by which the Court of Commissioners of Alabama Claims was constituted was approved by the President of the United States on June 23, 1874, and the same tribunal was re-established by the act approved June 5, 1882. 18 U. S. Sts. at Large, 245. 22 U. S. Sts. at Large, 98. The contract here in question was made on the 21st of June, 1882, a few days after the passage of the latter act. We shall have no occasion to consider whether this contract would have been voidable by reason of champerty if the services to be rendered or advances to be made which it contemplated were to have been rendered or made in a strictly legal proceeding, such as a suit at law by the defendant against another party, and whether it would, under such circumstances, have come within the definitions of champerty or maintenance as these are found in our decisions. *Swett* v. *Poor*, 11 Mass. 549. *Brinley* v. *Whiting*, 5 Pick. 348. *Scott* v. *Harmon*, 109 Mass. 237. *Blaisdell* v. *Ahern*, 144 Mass. 393.

Champerty is a species of maintenance, and is so termed because, by a champertous contract, the money or land to be obtained by legal proceedings is to be divided between the party bringing and the party promoting the suit. Maintenance is an offence by the common law and by the St. 32 Hen. VIII. c. 9, which in *Brinley* v. *Whiting, ubi supra,* is said to have been adopted in this Commonwealth. It is defined by Blackstone as " an officious intermeddling in a suit that no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it." 4 Bl. Com. 134. The grounds upon which contracts were held voidable for champerty or maintenance, as against the policy of the law, were, that there might be combinations of powerful individuals to oppress others which might even influence or overawe the court, and that they tended to the promotion and enforcement of unfounded claims, to disturb the public repose, to promote litigation, and to breed strife and quarrels among neighbors. With the progress of society these reasons have everywhere lost much of their force, and the whole doctrine on this subject has been rejected in several States of the Union as antiquated and incongruous in the existing state of society, notably in New Jersey, Texas, California, and Mississippi. Without desiring to modify or in any way recede from the doctrine on this subject, as it has heretofore been held in Massachusetts, we see no reason for its further extension.

Neither the definition of champerty nor the reasons why it was held to be an offence have any proper application to a proceeding such as that by which the defendant, under his contract with the plaintiff, sought to enforce his claim against the government of the United States. There was no suit to be brought, nor any defendant in the proposed proceeding, in the same sense that there is in a contested cause at law or in equity. Acknowledging its liability to certain classes of our citizens who had suffered by the depredations on our commerce, during the civil war, to the extent of the sum received from the government of Great Britain, which had been held responsible therefor, the United States ordered this sum to be distributed among them. The first class of claimants described by the act was to receive its claims in full if this amount would satisfy them, otherwise

*pro rata.* This class being satisfied, the second class was to receive its claims in full, if the amount remaining would satisfy them, otherwise *pro rata.* The judgments rendered were to be paid from the Treasury of the United States, through the officers of that department. These judgments were to be rendered, and the distribution was to be made, after hearing, upon proper notice, all parties who should seek to bring themselves within the classes described in 'the act.

While the commissioners were called a court, and were clothed with many of the attributes of one 'for the purpose of conducting their investigations efficiently, many of the characteristics of a judicial tribunal were wanting. It was provided that an officer, appointed by the Attorney General of the United States and acting under his supervision, should attend their sessions, but it was only to see that pretended claims were not allowed, to the injury of those entitled to the benefit of the fund, and thus that there was a fair division of it. The proceeding before this tribunal was an inquest, as distinguished from a trial or a lawsuit. The action of the tribunal was that of a committee to which the inquiry as to the division of the fund was confided. There could be no final action as to any claim, until it was decided what claims should be allowed to participate in the division. There was no appeal, either in law or fact, from any of the decisions of the commissioners. There was no contest to ensue between contending parties before it, and no strife which could be stirred up between them. Indeed, if it was found by them that a particular loss was the proper subject of a legal claim, but that there was a controversy as to who was entitled to the claim and to receive the benefit of it, the commissioners, following *Comegys* v. *Vasse,* 1 Pet. 193, held that they could not decide it. While they could decide conclusively upon the amount and validity of claims, they could not determine the conflicting rights of parties to the sum awarded. That was to be finally determined in some other tribunal. Hackett, Geneva Award. *McLeane* v. *United States,* Davis's Report of Decisions of Commissioners, 112. *Heard* v. *Sturgis,* 146 Mass. 545.

The plaintiff by his contract proposed to be a party, as the representative of the defendant, to this inquiry as to the amount and validity of his claim only. No suit was to be brought, no

litigation initiated, by him.  His agreement was not, therefore, voidable, in our view, because his contemporaneous agreement for the fees he was to receive for his services and expenses was for a sum equal to nine per cent of the claim which might be recovered.

In *Wright* v. *Tebbitts*, 91 U. S. 252, it was held that a commission called together in pursuance of a treaty stipulation to settle and adjust disputed claims, with a view to their ultimate payment and satisfaction, is for that purpose a quasi court, and that there is nothing illegal, immoral, or against public policy in an agreement by an attorney at law to present and prosecute a claim before it, either at a fixed compensation or at a reasonable percentage on the amount recovered.  The commission referred to in this decision differed in no essential respect from the Court of Commissioners of Alabama Claims.  To the same effect is *Wylie* v. *Coxe*, 15 How. 415.  *Stanton* v. *Embrey*, 93 U. S. 548, holds that a contract to prosecute a claim before one of the executive departments for a contingent fee is not illegal.  Nor do we think any distinction can be made because, in the cases cited, it does not appear that any expenses were to be paid by the attorney, which to some extent appears to have been contemplated in the present case.

The contract in the case at bar, while made in Massachusetts, was to be performed in Washington, before a tribunal of the United States.                  *Exceptions overruled.*