F. B. VANDEGRIFT & COMPANY, *Appellees*, v. THE
LANYON ZINC COMPANY et al., *Appellants*.

No. 17,662.

#### SYLLABUS BY THE COURT.

CONTRACT—*Customhouse Brokers—Contingent Fee—Recovery.*
Under the facts stated in the opinion a contract by a firm of
customhouse brokers with a smelting company to procure,
at their own expense, for a compensation of fifty per cent of
the amount collected, the refunding of excess duties exacted
by revenue officers on importations of lead and zinc ore, is
held to be neither champertous nor unconscionable; and it is
further held that the brokers are entitled in equity to be paid
their portion of a sum refunded by the government through
their efforts under the contract, out of a treasury warrant for
such sum issued to the smelting company and delivered to its
receiver, although, under the circumstances, the ores were in
fact owned and the duties paid by another corporation.

Appeal from Allen district court. Opinion filed June
8, 1912. Affirmed.

*Altes H. Campbell*, and *John F. Goshorn*, for the
appellants.

*E. W. Myler*, *Charles H. Apt*, and *Frederick G. Apt*,
for the appellees.

The opinion of the court was delivered by

BURCH, J.: The Lanyon Zinc Company, owning smelt-
ers at Iola and La Harpe, smelted imported lead and
zinc ore for itself and others. Ultimately it confined its
operations to treating ores for the American Metal
Company on a toll basis. Shipments of these ores
were consigned to the zinc company, which maintained
a bonded warehouse at its plant. The ores were in-
spected there and then released. Assays were then
made, the amount of the duty determined, and the zinc
company notified. It immediately paid the duty, and
drew a sight draft on the metal company for the
amount.

Vandegrift v. Zinc Co.

In the conduct of this business illegal duties were charged and collected by the revenue officials, which the zinc company protested in its own name and which it undertook to recover from the government.   To this end it employed the plaintiffs, a firm of customhouse brokers, under a contract which reads as follows:

"We hereby employ F. B. Vandegrift & Co. to recover and collect any excessive custom duties, penalties and charges heretofore or hereafter, charged to or paid by us, or for our account, on all importations of zinc ores, etc., by us or for our account, and agree to pay said F. B. Vandegrift & Co., fifty per cent of such recoveries.   We are not to be liable for any expenses or charges incurred by F. B. Vandegrift & Co., in the premises, and F. B. Vandegrift & Co. are not to be liable for failure to file protests, except where they receive actual notice of liquidation of an entry in reasonable time to file the protest thereon, and are not to be liable otherwise except for failure to exercise reasonable care and diligence in the premises."

Under this contract the plaintiffs secured the return to the zinc company of large sums of excessive duties. The services performed were of a special and peculiar character, requiring a technical knowledge of chemistry, metallurgy and assaying, an intimate knowledge of the classification of articles of import, and technical knowledge and experience in the procedure necessary under the revenue laws and department regulations to procure refunds of this character.   The plaintiffs attended inspections, prepared and filed proper protests, conducted contests, and prepared and conducted cases before the board of general appraisers at New York. They employed attorneys who finally succeeded in arranging a test case, involving the principal matters of dispute between the government and the zinc company, which was decided in favor of the zinc company by a federal court in Texas.   After that the plaintiffs followed up protests by showing to the board of general appraisers that the duties protested were governed by

the test case.    The terms of the contract were those
usual in the customs brokerage business.

In April, 1909, defendant Rogers was appointed re-
ceiver of the zinc company.    A government warrant
was issued in favor of the zinc company for the sum
of $22,533.18, protested duties refunded through the
efforts of the plaintiffs.    This warrant was received
by Rogers, and was immediately indorsed and delivered
by him to the American Metal Company.    The plaintiffs
sued the zinc company and the receiver for their share,
one-half, of this sum and recovered.    As a part of the
judgment the receiver was ordered to pay into court
for the use of the plaintiffs out of the amount of the
warrant the sum of $11,266.69 and the costs of the suit.
The receiver and the zinc company appeal.

It is argued that the contract is champertous.    Cham-
perty involves the prosecution or maintenance by one
party at his own expense of the suit of another for a
share of the anticipated judgment.    (*A. T. & S. F. Rld.
Co. v. Johnson,* 29 Kan. 218, 227.)    It is not essential
that an action be pending when the contract is made
but litigation must be contemplated.    (6 Cyc. 852.)
Champerty as thus defined by the common law is fully
recognized in this state.    (*Moreland v. Devenney,* 72
Kan. 471, 83 Pac. 1097, and cases cited in the opinion.)
The doctrine, however, has not been extended; and in
view of the fact that the reasons by which it was for-
merly supported have lost much of their force through
the progress of society it ought not to be extended.
Agreements to pay contingent fees for services ren-
dered in securing by moral methods the allowance of
claims of a legitimate character by the executive de-
partments of the government or commissioners ap-
pointed to examine claims have never been regarded
as champertous, and this is true even where the con-
tingent fee also covers expenses incurred in the prose-
cution of the claim.    (*Manning v. Sprague,* 148 Mass.
18, 18 N. E. 673, 12 Am. St. Rep. 508, 1 L. R. A. 516.)

In the case just cited an agreement was held to be valid and enforceable by which an attorney was to receive a percentage of the amount recovered for his services and expenses in the prosecution of a claim before the court of Commissioners of Alabama Claims. The court said:

"Neither the definition of champerty nor the reasons why it was held to be an offence have any proper application to a proceeding such as that by which the defendant, under his contract with the plaintiff, sought to enforce his claim against the government of the United States. There was no suit to be brought, nor any defendant in the proposed proceeding in the same sense that there is in a contested cause at law or in equity. . . . The proceeding before this tribunal was an inquest, as distinguished from a trial or a lawsuit." (pp. 20, 21.)

Likewise in this case the business fell entirely outside the ordinary course of legal procedure. The test case by which the proper application of the revenue laws to the importations in question was finally settled was a mere incident growing out of the plaintiff's employment, an expedient adopted by them and not a substantive part of the contract which the parties had in contemplation when it was made.

It is argued that the contract was unconscionable. The case of *Taylor v. Bemiss*, 110 U. S. 42, involved a contingent fee for the prosecution of a claim before the Southern Claims Commission. The court said:

"It was decided in the case *Stanton v. Embrey*, 93 U. S. 548, that contracts by attorneys for compensation in prosecuting claims against the United States were not void because the amount of it was made contingent upon success, or upon the sum recovered. And the well-known difficulties and delays in obtaining payment of just claims which are not within the ordinary course of procedure of the auditing officers of the government, justifies a liberal compensation in successful cases, where none is to be received in case of failure. Any other rule would work much hardship in cases of creditors of small means residing far from the seat of gov-

ernment, who can give neither money nor personal attention to securing their rights. . . . While fifty per cent seems to be more than a fair proportion in the division between client and attorney in an ordinary case, we are not prepared to assume that it is extortionate for that reason alone, and the testimony of the lawyers on that subject, taken as experts, does not justify such a conclusion." (pp. 45, 46.)

In the present instance the services performed were not in any sense those of an attorney in an ordinary case, and the evidence shows the compensation agreed upon was that which was generally recognized as proper. There is no suggestion that fraud was practiced or any undue advantage taken.

The defendants seem to think they should not be liable because the ore in fact belonged to the metal company and because that company ultimately paid the duty which was refunded. Under the revenue law the zinc company was deemed and held to be the owner of the property. (26 U. S. Stat. at L., p. 131.) Neither the government nor the plaintiffs knew the metal company, and it is not material to this controversy what the arrangements were between that company and the zinc company. The plaintiffs executed their contract with the zinc company and are entitled to their compensation.

It is claimed that the court erred in ordering the judgment paid out of the warrant which the receiver received. The metal company having entrusted the collection of excess duties on its ores to the zinc company, the zinc company had a legitimate claim on the fund for the expenses incurred and it was the duty of the receiver to account to the court for the warrant and obtain an order for the disposition of the money in the regular way. He could not arbitrarily divest himself of the fund. It should be regarded as still in his possession, and the plaintiffs were entitled in equity to a lien upon it for their share.

Some complaint is made by both parties respecting

the admission of evidence but the court is unable to say that the merits of the case were affected in any substantial way by the rulings made.

The judgment of the district court is affirmed.