# ROBERTS *v.* CONSAUL.

ATTORNEY AND CLIENT; CLAIMS AGAINST THE UNITED STATES, ASSIGN-
MENTS OF; EQUITABLE LIENS; RECEIVERS; APPEALS.

1. A contract by a claimant employing an attorney to prosecute a claim
against the United States in the court of claims upon a contingent
fee of 50 per cent of the amount recovered, and stipulating that the
fee shall be a lien upon any draft issued by the government in pay-
ment of the claim, is not an assignment of a claim against the United
States within the meaning of §§ 3737 and 3477, U. S. Rev. Stat. pro-
hibiting the assignment of such claims before their allowance.

2. While a debt due from the United States has no locality in the Dis-
trict of Columbia, yet when an appropriation has been made by Con-
gress to pay a finding by the court of claims in favor of a claimant,
and nothing remains to be done but the issuance by the Treasurer of
the United States of a check to the claimant in payment of the claim,
the fund has a locality in this District as between the Treasurer and
the claimant, or one having an equitable lien upon the fund created
by contract with the claimant.

3. Where, in a suit in equity by the administrators of an attorney against
a nonresident client and the Treasurer of the United States to estab-
lish an equitable lien upon a fund in the Treasury of the United
States for which a check was about to be issued by the Treasurer,
which lien was created by contract between the attorney and client,
a demurrer by the Treasurer of the United States to the bill of
complaint on the ground that the court had no jurisdiction, because
the fund, being a debt due from the United States, had no locality
in the District of Columbia, was overruled, and a decree passed
appointing a receiver to demand and receive from the Treasurer that
portion of the fund claimed by the complainants,—it was *held*, on
appeal by the Treasurer from such decree, which appeal was taken
before service was had on his codefendant, that, even if an appeal
would lie by the Treasurer in view of the restricted nature of the or-
der as entered, as between him and the complainants the fund had a
locality in the District of Columbia; that he would be protected by
the receipt of the receiver; and that the final question of the ju-
risdiction of the fund could only be raised by the nonresident defend-
ant.

4. Where money has been appropriated by Congress to pay a finding
of the court of claims, the Treasurer of the United States is charged

with the plain ministerial duty of making immediate payment upon
the demand of the person in whose favor the appropriation has been
made; and the Treasurer may be compelled to do so by mandamus;
or a court of equity, having jurisdiction to appoint a receiver of the
fund and control its disposition, may compel its delivery through a
mandatory writ of injunction.

No. 1453.  Submitted January 13, 1905.  Decided February 7, 1905.

HEARING on an appeal by the defendant, the Treasurer of the
United States, from an order overruling a demurrer to a bill of
complaint, and appointing a receiver in a suit in equity to estab-
lish an equitable lien upon a fund in the Treasury of the United
States.                                              *Affirmed.*

The COURT in the opinion stated the case as follows:

This is a suit in equity begun by Charles F. Consaul and Ida
M. Moyers, administrators of the estate of Gilbert Moyers,
against Ellis H. Roberts, as Treasurer of the United States, and
one John Holland, who resides in the State of California.

The bill alleges that on June 25, 1886, one Pleasant W. Bar-
bee, as administrator *de bonis non* of James Campbell, deceased,
employed Gilbert Moyers as his attorney to prosecute a claim
against the United States, and executed and delivered to him
the following obligation:

Know all men by these presents, that I, Pleasant W. Bar-
bee, as administrator *de bonis non* of the estate of James
Campbell, deceased, have employed Gilbert Moyers, of Wash-
ington, D. C., as my attorney, to prosecute this claim against
the United States government, and, in consideration of his pro-
fessional services and expenses incurred by him in the prose-
cution of said claim, I agree to allow him the fee of 50 per cent
of the amount which may be collected thereon; and said fee is
hereby made a lien on any draft that may be issued in payment
of said claim.

Witness my hand and seal this 25th day of June, 1886.

                                        P. W. BARBEE.

Witnessed by L. C. CULSON.

It is further alleged that Moyers prosecuted said claim in the court of claims, which held that Campbell came within the terms of the act permitting recovery in such cases, but that the bulk of the property, the taking of which was the subject-matter of the suit, had been taken after his death, and that his next of kin were the proper parties to maintain the suit; that Moyers informed the latter of this decision, and they thereupon authorized him to appear for them and prosecute the claims on their behalf; that Moyers then prepared a petition on behalf of John Holland, who was a grandson of said Campbell, and sent it to him for execution; that said Holland executed and returned the same, authorizing Moyers to prosecute the suit on his behalf, and agreeing to the same terms and conditions as in the contract made with Barbee, administrator, before set out; that in the suit so prosecuted the court of claims awarded the sum of $403 to said Holland on April 10, 1899; that on May 27, 1902, Congress appropriated the sum of $403, out of any money in the Treasury, to be paid to said John Holland in satisfaction of said award; that the said Holland failed during the life of said Moyers, whose services had procured the establishment of the claim, to execute a power to him to receive said money from the Treasury, and since his death has refused to empower the administrators aforesaid to receive the same, and has not paid the fee due to said Moyers; that said Holland has not only refused to pay said fee, but is endeavoring to obtain possession of the draft for said appropriation, with the intent to defraud the plaintiffs as administrators; that said Holland has no other property of any kind within the jurisdiction of the court, and, unless restrained, will procure the transmission of the draft to a place beyond the jurisdiction of the court.

The prayers were that Holland be restrained from receiving the draft, and Roberts, as Treasurer, from delivering the same to him; that a receiver be appointed to receive said draft and to collect the money thereon to be held subject to the further order of the court; and for a decree against Holland for

$201.50 with costs of suit, to be established as a lien upon said fund and paid out of the same, etc.*

No service of process has been had upon Holland, and he has made no appearance. Defendant Roberts, having been served with process, appeared and entered a demurrer to the bill. Subsequently, by way of return to the rule to show cause, he objected to the jurisdiction of the court because of his relation to the fund as an officer of the United States, merely, in the discharge of an official duty, and set up the invalidity of the contract as an assignment of a claim against the United States.

The demurrer was overruled, and an order was entered appointing one Christopher N. Wilson receiver, and directing him to demand and receive of defendant Roberts, as Treasurer of the United States, the sum of $201.50 out of the $403 appropriated for the defendant John Holland.

From this decree the defendant Roberts has appealed.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. James S. Easby-Smith,* Assistant, for the appellant:

1. While an officer of the United States may, in regard to purely ministerial duties, be restrained by injunction or compelled by mandamus, yet these remedies may be invoked only when, in the one case (injunction), a plain official duty is threatened to be violated and some person will sustain personal injury thereby, for which adequate compensation cannot be had at law, and, in the second case (mandamus), where an officer refuses, to the injury of some person, to perform a plain official duty. *Roberts* v. *Bradfield,* 12 App. D. C. 453, 458; *Bradfield* v. *Roberts,* 175 U. S. 291, affirming last cited case; *Noble* v. *Union River Log. R. Co.* 147 U. S. 165, 172; *Board Liquidation* v. *McComb,* 92 U. S. 531, 541. The defendant Roberts,

_____

* On the same day the bill was filed an order was entered restraining both defendants as prayed, until further order of the court; and a rule was laid on the defendants to show cause why a receiver should not be appointed.—REPORTER.

as Treasurer of the United States, has neither threatened to violate nor refused to perform a plain official duty.

2. Furthermore, this suit, being one to restrain the United States from paying one of its debts, is substantially a suit against the United States, and the United States is a necessary party. *Stanley* v. *Schwalby,* 147 U. S. 508, 512. See also *Re Ayers,* 123 U. S. 443; *The Siren,* 7 Wall. 152, 154. But the United States cannot be sued without its consent. This doctrine is indisputable. See cases last above cited, and also *United States* v. *Clarke,* 8 Pet. 436, 444.

3. No injunction can be issued by the courts of the United States against officers of a State to restrain or control the use of property already in the possession of the State or money in its treasury when the suit is commenced; or to compel the State to perform its obligations; or where the State has otherwise such an interest in the subject of the suit as to be a necessary party. And the same rule applies to officers of the United States. *Belknap* v. *Schild,* 161 U. S. 10. See also *Minnesota* v. *Hitchcock,* 185 U. S. 373; *International Postal Supply Co.* v. *Bruce,* 194 U. S. 601, 606; *United States* v. *Guthrie,* 17 How. 284; *Re Ayers,* 123 U. S. 443, 489, 502, 506, 507. The court below is, therefore, without jurisdiction or power to compel the defendant Roberts, as Treasurer, to pay over money of the United States. It is true the order of the court below appointing the receiver does not, in so many words, command the Treasurer to pay the money to the receiver; but should the Treasurer refuse to pay out the money on demand of the receiver the next step would necessarily be a motion for an order compelling him to pay it. The Code of the District of Columbia provides, in sec. 113, for the enforcement of final decrees, and sec. 114 provides that "all interlocutory orders may be enforced by such process as might be had upon a final judgment or decree to the like effect." Now if the court below has no power to make an order compelling the Treasurer to pay out the money,— and it is submitted that it has been clearly shown that it has no such power,—then its action in appointing a receiver is abortive. The power to compel payment and the power to appoint a receiver necessarily stand or fall together.

4. Passing now to the defendant Holland, how has the court below obtained jurisdiction of him? It is alleged in the bill of complaint that he is a resident of the State of California. The record discloses the fact that all the process issued by the court below was returned not found as to him, and fails to disclose any attempt on the part of the complainants to secure service of process by publication, as provided by secs. 105 and 106 of the Code of the District of Columbia, even could service be secured in such manner on the ground that he has property located within the District of Columbia and within the jurisdiction of the court, which question will be discussed later. A final decree in equity, or an interlocutory decree, which, in a great measure, decides the merits of the cause, cannot be pronounced until all the parties to the bill, and all the parties in interest, are before the court. *Conn* v. *Penn,* 5 Wheat. 424; *Marshall* v. *Beverly,* 5 Wheat. 313; *Traders' Nat. Bank* v. *Campbell,* 14 Wall. 87.

5. The court below has no jurisdiction of the subject-matter of the suit. This fund has no separate entity as distinguished from the general funds of the United States, which are in the custody of the Treasurer and his assistants, not only in the Treasury in Washington, but in the various subtreasuries throughout the country, and cannot be segregated from this general fund except by regular proceedings governed by law, namely, by a warrant issued by the Secretary of the Treasury authorizing its separation and withdrawal from the general fund. This money is not set aside into a specific fund, but is to be paid out of the general fund of moneys belonging to the United States. See *Wyman* v. *Halstead,* 109 U. S. 654; *Buchanan* v. *Alexander,* 4 How. 19, 20. See also *The Siren,* cited above. If there is any property of the defendant Holland within the District of Columbia and the jurisdiction of the court below, it consists of a debt due by the United States to said Holland. But it is well settled that debts due from the United States have no locality at the seat of government. *Vaughan* v. *Northup,* 15 Pet. 1. See also *Mackey* v. *Coxe,* 18 How. 100, 105; *Wyman* v. *Halstead,* 109 U. S. 654, 656, 658; *United States* v. *Borcherling,* 185 U. S. 223, 233.

6. If this claim or debt is property of the defendant Holland located in the District of Columbia, still it is not within the jurisdiction of the court below, for the bill prays for and the court granted what amounts to an equitable attachment of funds in the hands of the United States, or of a debt due from the United States. A debt due by the United States or by a State or municipal government cannot be reached by attachment or garnishment. Drake, Attachm. §§ 492–515; *Buchanan* v. *Alexander,* 4 How. 19, 20.

7. There is no equity in the bill of the complainants because it seeks to enforce a void assignment. Section 3477, U. S. Rev. Stat., provides that "all transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same." This law has been sustained in a long line of cases, and a very clear distinction has been drawn between voluntary assignments made by individuals and transfers of title by operation of law. It prohibits assignments by individuals, but does not apply to the passing of claims to heirs, devisees, assignees in bankruptcy, copartners, and so forth. *Erwin* v. *United States,* 97 U. S. 392, 397; *Spofford* v. *Kirk,* 97 U. S. 484; *Goodman* v. *Niblack,* 102 U. S. 556, 560; *Hobbs* v. *McLean,* 117 U. S. 567; *Butler* v. *Goreley,* 146 U. S. 303, 311–313;

*Hager* v. *Swayne,* 149 U. S. 242; *Ball* v. *Halsell,* 161 U. S. 72; *Howes* v. *United States,* 24 Ct. Cl. 170; *Owens* v. *Wilkinson,* 20 App. D. C. 51.    The contract set forth in the bill of complaint is, if a contract at all, merely a personal agreement between Holland and Moyers, and did not give Moyers a lien upon the claim of the defendant Holland.    *Trist* v. *Child,* 21 Wall. 441, 447.    If Moyers had not such a lien, the bill is without equity, and must be dismissed.    *Spofford* v. *Kirk,* 97 U. S. 484, 487.    Furthermore, if the contract did give Moyers a lien upon the claim of Holland against the United States, it could operate only as an equitable assignment of a portion of the claim, and if it is an equitable assignment it is absolutely void under sec. 3477, U. S. Rev. Stat.    *Spofford* v. *Kirk,* 97 U. S. 488.

8.    There is no equity in the bill because it seeks, by virtue of a decree in equity, to create a lien in the nature of an assignment by operation of law; in other words, it seeks the aid of a court of equity to breathe life and validity into a void assignment.

*Messrs. Cole & Donaldson* for the appellees.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1.    We will first consider the question whether the contract sought to be enforced is in violation of secs. 3737, 3477, U. S. Rev. Stat. (Comp. Stat. 1901, pp. 2507 and 2320).    Those sections were enacted for the protection of the United States, and not of persons having claims against them.    "They were passed in order that the government might not be harrassed by multiplying the number of persons with whom it had to deal, and might always know with whom it was dealing until the contract was completed and a settlement made."    *Hobbs* v. *McLean,* 117 U. S. 567, 576, 29 L. ed. 940, 943, 6 Sup. Ct. Rep. 870.    And, as was said in that case, they "simply forbid the assignment of such claims before their allowance, the ascer-

tainment of the amount due thereon, and the issue of a warrant for their payment." In the cases relied on in support of the appellant's contention (*United States* v. *Gillis,* 95 U. S. 407, 24 L. ed. 503; *Spofford* v. *Kirk,* 97 U. S. 484, 24 L. ed. 1032; *Hager* v. *Swayne,* 149 U. S. 242, 37 L. ed. 719, 13 Sup. Ct. Rep. 841; *Ball* v. *Halsell,* 161 U. S. 72, 40 L. ed. 622, 16 Sup. Ct. Rep. 554, and others), there were express assignments of a whole or a part of the claims; and in some of them the assignees undertook the prosecution in their own names.

The original contract here involved that was made with Campbell's administrator, and, as charged in the bill, adopted by Holland and others when the suit was instituted in their names, brings the case within the doctrine enounced in *Hobbs* v. *McLean,* 117 U. S. 567, 576, 29 L. ed. 940, 943, 6 Sup. Ct. Rep. 870, and makes it analogous to *Sanborn* v. *Maxwell,* 18 App. D. C. 245, 253, in which that doctrine, as apprehended by us, was applied, although the facts in neither case are identical with those here presented. No more than in those cases does this contract, as we understand its purpose and effect, assign or transfer to the plaintiffs' intestate any part of a claim against the United States, or any right to demand payment from them by suit or otherwise. By it they merely retained Moyers as their attorney to prosecute the claim against the United States in the court of claims on their behalf and in their names, agreeing to pay him one half of the amount that might be collected, in consideration of the services to be performed by him. Any intention to assign him an interest in the claim itself is also negatived by the stipulation that the fee agreed upon should be a lien upon the draft when issued in payment. None of the evils which the statutes were intended to prevent could arise from such an agreement. Persons having claims against the United States that must be collected through proceedings in the court of claims are practically compelled, in the majority of cases, to employ attorneys and contract with them for fees contingent upon success. Such contracts are not unlawful, and may be enforced according to their terms where fair and reasonable. *Taylor* v. *Bemiss,* 110 U. S. 42, 45, 28 L. ed. 64, 65, 3 Sup. Ct. Rep. 441.

Such contracts not being otherwise opposed to public policy, it would be an unreasonable construction of statutes intended solely for the protection of the United States to extend them thereto.   In our opinion they are neither within the letter nor the spirit of the sections referred to, where they fall short of an actual assignment of a specific interest in the claim itself.

2.   The next question is, whether the court had jurisdiction of the subject-matter of the suit.

The services of the attorney, as contracted for, were performed and the consideration therefor earned when the judgment was recovered.   All that remained for him to do, if permitted, was to receive the draft for the appropriation made by Congress for the payment of the judgment.

The contract being a lawful one and providing that the stipulated fee for the services of plaintiffs' intestate should be paid out of the amount to be collected, and should constitute a lien upon the draft to be issued in payment thereof, he had a lien upon the fund enforceable in equity.   *Sanborn* v. *Maxwell,* 18 App. D. C. 245, 252, and cases there cited.   One having such a lien, as well as one who acquires a lien through a creditor's bill, may obtain from a court of equity having jurisdiction of the subject-matter and the parties such orders as may be proper and necessary to prevent the claimant of the fund subject thereto from withdrawing it from the reach of either.   *Price* v. *Forrest,* 173 U. S. 410, 423, 43 L. ed. 749, 753, 19 Sup. Ct. Rep. 434; *Sanborn* v. *Maxwell,* 18 App. D. C. 245, 253.

But it is contended that the court has no jurisdiction in this case because the fund, being a debt due from the government of the United States, has no locality in the District of Columbia. This is undoubtedly true as a general proposition, for the reason that, as said by the Supreme Court of the United States, "The United States, in their sovereign capacity, have no particular place of domicil, but possess, in contemplation of law, an ubiquity throughout the Union;" and hence "the debts due by them are not to be treated like the debts of a private debtor, which constitute local assets in his own domicil."   *Vaughan* v. *Northup,* 15 Pet. 1, 10 L. ed. 639.   See also *United States*

*use of Mackey* v. *Coxe,* 18 How. 100, 15 L. ed. 299; *Wyman* v. *Halstead* (*Wyman* v. *United States*) 109 U. S. 654, 27 L. ed. 1068, 3 Sup. Ct. Rep. 417; *United States* v. *Borcherling,* 185 U. S. 223, 233, 46 L. ed. 884, 889, 22 Sup. Ct. Rep. 607.

The conditions of this case are unlike those in so far as the appellant is now concerned. As between him and the appellees the fund has a locality in the District of Columbia. By the authority of those cases he would be protected by the receipt of the receiver appointed in the decree appealed from. That decree, it must be remembered, does not command the appellant to surrender the draft or pay over the money in the Treasury that has been appropriated by Congress for the payment of Holland, but simply authorizes the receiver to demand and receive the same.

The final question of jurisdiction of the fund can only be raised by the defendant Holland, who is alleged to be a resident of California, and who, not having been brought before the court by process, is not concluded by the decree. Until he shall have been made a party, it will not be proper to issue an order commanding the appellant to deliver up the fund. If when made a party by proper process, Holland shall not object to the jurisdiction on the ground of his nonresidence, there will be an end of the question. If, when so brought into the case, he does make the objection in a proper manner and at the proper time, the question will have to be determined. Until then it will not be proper to intimate an opinion in respect of it.

In view of the restricted nature of the order as entered, it is not perfectly clear that the appellant had the right to take this appeal; but the point has not been suggested, and it is not of sufficient importance to raise and determine it of our own motion. The existence of a possible doubt in this regard has been mentioned in order that, by entertaining the appeal under the circumstances, we shall not be understood as expressly affirming the absolute right thereof from all orders of the kind.

We may add, also, that it would be a better practice in such cases to wait upon service of process on the claimant, and the entry, thereafter, of a decree commanding the delivery of the

fund.    With all the parties before the court every question
involved could be finally determined.

3.    Assuming, as we must for the purposes of the present
appeal, that the court below had jurisdiction of the subject-
matter, we have no doubt of its jurisdiction to control the action
of the appellant, notwithstanding his official capacity, in respect
of the payment of the fund.    The suit is in no sense against
the United States.    The money having been appropriated and
directed to be paid to the claimant, they have no interest in the
controversy.    By the act of appropriation the appellant, as
Treasurer of the United States, is charged with the plain, min-
isterial duty of making immediate payment upon the demand
of the person specified therein.    If unrestrained by the order
of a court having jurisdiction in the premises, he should refuse
to make the payment to the claimant a court of law would com-
pel him to do so by writ of mandamus.    *Roberts* v. *United
States,* 13 App. D. C. 38, 46, 176 U. S. 221, 231, 44 L. ed.
443, 447, 20 Sup. Ct. Rep. 376.    For the same reason a court
of equity, having jurisdiction to appoint a receiver of the fund
and to control its disposition, may compel its delivery through
a mandatory writ of injunction.

Finding no error in the decree appealed from, it will be
affirmed with costs; and it is so ordered.            *Affirmed.*