# SANBORN *v.* MAXWELL.

EQUITABLE ASSIGNMENTS; ARBITRATION AND AWARD; CREDITOR'S BILL; ASSIGNMENTS OF CLAIMS AGAINST THE UNITED STATES.

1. An oral agreement to pay attorneys a specific sum as compensation for services to be performed in securing an appropriation from Congress, which sum is to be, to that extent, an interest in the money to be appropriated, will create a charge upon the proceeds of such an appropriation, enforceable as an equitable assignment or lien.

2. Parties holding such a lien, and in favor of whom an award of a specific sum of money has also been made in proceedings under an agreement to arbitrate, may maintain a creditor's bill in equity upon such award without first reducing their demand to judgment, the award, if regularly made, being as conclusive of the demand, both in respect of its validity and amount, as a judgment would be; or being, at least, sufficient foundation for the enforcement of their equitable lien.

3. Where one of two parties has an equitable lien upon a fund to be realized by the other for services to be performed, and in arbitration proceedings between the parties to determine the amount due for such services, is awarded a sum certain for such services, the lien is not merged in the award, but remains enforceable for the full amount of the sum awarded.

4. There is nothing in section 3477, R. S. U. S., rendering void all transfers and assignments made of any claim upon the United States, or of any part or share thereof or interest therein, unless executed in a certain manner, that will prevent any court of competent jurisdiction as to the subject-matter and parties from making such orders as may be necessary and appropriate to prevent one who has a claim for money against the Government from withdrawing the proceeds of such claim from the reach of his creditors; provided such orders do not interfere with the examination and allowance, or rejection of such claim by the proper officers of the Government, nor in any wise obstruct any action that such officer may legally take under the statutes relating to the allowance or payment of claims against the United States; *following* Manning *v.* Ellicott, 9 App. D. C. 71, and Marble Co. *v.* Burgdorf, 13 id. 506.

No. 1042. Submitted May 5, 1901. Decided May 22, 1901.

HEARING on an appeal (specially allowed) by one of several defendants from an interlocutory order of the Supreme Court of the District of Columbia overruling the demurrer of such defendant to a bill in equity for an injunction, the appointment of a receiver, and the enforcement of an equitable lien upon a fund in the Treasury of the United States claimed by said defendant. *Affirmed.*

The COURT in its opinion stated the case as follows:

· This case comes before us on a special appeal allowed from a decree overruling a demurrer to the complainants' bill.

The bill was filed by Charles A. Maxwell and George S. Chase as partners against John B. Sanborn and Charles King, who were sued as former partners. Complainants are attorneys, resident in the District of Columbia, where King, who is an attorney, also resides. Sanborn resides in the State of Minnesota. Ellis H. Roberts, as Treasurer of the United States, was made a party defendant by amended bill. The substantial charges of the bill are: In the year 1889, Sanborn had a contract with certain bands of Sioux Indians to collect from the United States certain forfeited annuities under a former treaty with said Indians. In 1889, the United States negotiated a treaty with the Indians which, among other things, provided for the restoration of the annuities, which was sent to Congress for ratification in December, 1890. In December, 1890, Sanborn, who was an attorney himself, verbally retained complainants to perform certain services in connection with the preparation of the cases of the Indians for presentation before the appropriate committees of Congress, and to appear before them for Sanborn on account of said Indians. " It was agreed between said defendant, Sanborn, and these complainants that the latter should receive the sum of $5,000 as compensation for their services, which said sum was to be, to that extent, an interest in the said fees of the said defendant, Sanborn." Said services were continuous and laborious, and contributed to the settlement of the said Indians' claims. A part of the

fees due Sanborn, namely, $13,000, was paid over to him, and the remainder was postponed on account of certain questions concerning the expiration of his contracts. Sanborn, on account of this postponement, refused to pay complainants until the balance claimed by him should be allowed and paid, and removed the sum collected to Minnesota. Complainants then assisted Sanborn in the prosecution of his postponed claims, and the same were allowed by Congress in March, 1899, which directed the payment to Sanborn of the balance due him, namely, $41,702.21, all of which, excepting about $3,880, was collected by Sanborn in March, 1899. Sanborn again refused to pay complainants and removed the money as before.

Upon request of Sanborn, an agreement for arbitration was executed by the parties on May 17, 1899. The arbitrators agreed upon, met, heard the dispute and made an award in writing to the effect that Sanborn should pay the complainants the sum of $3,300.

The award was accepted by the parties, and on July 6, 1899, Sanborn paid complainants the sum of $1,500, which they allow as a credit on the same, but has failed and refused to pay the balance due, namely, $1,800, with interest. There remain due to Sanborn the sum of $1,840 due in 1899, and $1,840 due in 1900, which complainants fear he will collect and remove from the jurisdiction, if not restrained. By reason of the facts alleged and the former misapplication of funds by Sanborn, he has shown himself an improper person to receive the money belonging jointly to him and complainants.

The allegations against King are that he was a partner with Sanborn in the contracts, though the same were in Sanborn's name alone, and he is joined on that account, and called upon to answer, though not under oath.

The prayers of the bill are, that Sanborn and King be enjoined from receiving any money from the Treasury on account of said sums due, that the Treasurer be restrained from paying the same, that a receiver be appointed to collect and hold the fund, and for the payment to complainants there-

from, the balance due on the said award. The injunction was granted and a receiver appointed, who has collected the sum of $3,680, due Sanborn, and holds the same subject to the order of the court.

King answered the bill; but the matters of his defense are not involved on this appeal. Sanborn entered a demurrer, which, having been overruled, he was granted leave to take this appeal from the order.

*Mr. Henry E. Davis* and *Mr. Charles Cowles Tucker* for the appellant:

1. The mere fact that the debtor is a nonresident and is about to remove assets from this jurisdiction, will not entitle a simple contract creditor to maintain his bill in equity without first reducing his claim to judgment. The extent to which this rule has been modified is this, that, as the law will not compel a party to do a useless thing, if the debtor is a nonresident and is also insolvent, so that he has no assets *anywhere* out of which the claim of his creditors may be satisfied, he, the creditor, cannot be said to have an adequate remedy at law, and he will not be required to reduce his claim to judgment and to issue and secure a return of execution, before resorting to a court of equity for relief. *Hess* v. *Horton,* 2 App. D. C. 81; *Hardware Company* v. *Driggs,* 13 App. D. C. 272; *Smith* v. *Railroad Company,* 99 U. S. 401; *Bethell* v. *Wilson,* 1 Dev. & B. Eq. (N. C.) 610; *Jones* v. *Green,* 1 Wall. 330. In the case at bar, there is no charge of insolvency against the defendants, or either of them, and no intimation that the complainants could not collect a judgment if they obtained one.

2. While, in the body of the bill, the complainants claim to be the equitable *owners* of a certain portion of the fund in question, by reason of an equitable assignment from Sanborn, their claim in the submission is for a sum certain " *for services rendered by them,"* and the award is for the payment by Sanborn to them of a *definite sum.* In other words, before the filing of the bill, they claimed that the relation of debtor

and creditor alone existed between themselves and Sanborn, while now, although still endeavoring to enforce the award, they say that Sanborn is endeavoring to keep from them that of which they are the owners. It is submitted that the allegation in the body of the bill of an equitable assignment is " a mere pretense to give jurisdiction " and is only " a colorable disguise for the purpose of changing the forum of litigation," in the words of Judge Story (Eq. Jur., Sec. 74); and that the ruling of this court in *Hess* v. *Horton*, 2 App. D. C. p. 81, is specially applicable here, namely, that the rule that equity has no jurisdiction where plain and adequate remedy can be had at law, is necessarily most closely adhered to in Federal courts, in view of the constitutional provision establishing the distinction between law and equity and preserving the right of trial by jury. See *Hipp* v. *Babin*, 19 How. 271; *Grand Chute* v. *Winegar*, 15 Wall. 373; *Pechstein* v. *Smith*, 14 App. D. C. 27. There can be no doubt that the appellees have an adequate remedy at law, by an action to enforce the award. It is not alleged, as has already been seen, that the appellant is insolvent, or not able to respond to any judgment. But the appellees seek, indirectly, to enforce the award. We submit this cannot be done in equity. Equity will not interpose to enforce specific performance where there is an adequate remedy at law, as, for example, when the award simply directs the payment of a sum of money. Morse on Arbitration and Award, p. 60 *et seq.*; Bac. Abr. "Arbitrament," etc.; *Thompson* v. *Noel*, 1 Atk. 62; *Hall* v. *Hardy*, 3 P. Wms. 187. For mode of enforcing an award, see Cox Common Law Practice, p. 277.

3. Whatever may have been the contract between the appellee and Sanborn prior to the submission, the award effected a merger of the original cause of action, and their action must now be upon the award and not upon the original cause of action, which, the bill attempts to make out, was upon an assignment by which they acquired an equitable lien. 2 Am. & Eng. Encyc. (2d ed.) 798–9. See also *Kendall* v. *Stokes*, 3 How. 97.

4. There is nothing in the contract, even as complainants

allege it, which gives to them an equitable lien upon the fund in question. Their right to such a lien depends upon whether it can be said that Sanborn made them an equitable assignment of an interest in the fund. We submit that, upon their own showing, he did not. As to what constitutes an equitable assignment, see *Christmas* v. *Russell,* 14 Wall. 69. See also *Trist* v. *Child,* 21 Wall. 447; *Wright* v. *Ellison,* 1 Wall. 16; *Pugh* v. *Porter,* 112 U. S. 737; *Porter* v. *White,* 127 U. S. 235; *Woods* v. *Dickinson,* 18 D. C. 307; *Lamon* v. *McKee,* 18 D. C. 460–1; *Dillon* v. *Barnard,* 21 Wall. 439; 2 Am. & Eng. Encyc. (2d ed.) 1068, and cases cited.

5. It may be sought to sustain the jurisdiction of the court upon the theory that the fund, being in the Treasury of the United States, is subject to the jurisdiction of the court, irrespective of the residence of the parties. This involves, of course, the question whether the complainants can proceed in equity as simple contract creditors, and, if not, whether they have a lien upon the fund. These questions, we have endeavored to show, must be answered in the negative. But it should also be observed that a claim against the United States is not legally situated in the District of Columbia, but is payable anywhere in the United States, and in *Price* v. *Forrest,* 173 U. S. 410, which will be relied upon by appellees, the receiver was appointed at the instance of a judgment creditor in New Jersey. See *Wyman* v. *Halstead,* 109 U. S. 654; *In re Coit,* 3 App. D. C. 246; *King* v. *United States,* 27 C. Cls. 529; *Rutherford* v. *United States,* 27 C. Cls. 539.

6. If the court should be of opinion that, by the terms of the alleged contract between Sanborn and the appellees, he, at least in equity, assigned to them an interest in his contracts with the Indians, or in the fees he was to collect thereunder, it is clear that such assignment was void under Sec. 2106, R. S. U. S., read in connection with Sec. 2103. Sanborn's contracts were with " certain Sioux Indians belonging to the Sisseton and Wahpeton and Medawankanton and Wahpekootah bands," and referred to certain annuities which

they claimed of the United States. Sanborn's alleged assignment to the appellees was verbal and, therefore, clearly within the inhibition of section 2106.

7. Section 3477 renders void all transfers and assignments made of any claim upon the United States or of any part or share thereof or interest therein, unless executed in the presence of at least two attesting witnesses after the allowance of such claim, the ascertainment of the amount due and the issuing of a warrant for the payment thereof. If it be contended that the assignment by Sanborn was not of a claim against the United States, but of a claim against the Indians, we direct attention to the fact that Sanborn's fees were payable directly to him by the United States, government drafts or warrants being issued to him and in his name. See also act of Congress of March 3, 1899, Sec. 2 (30 Stat. 946). He did not collect his money from the Indians, but from the United States.

The act of February 26, 1853 (now R. S. U. S., Sec. 3477), renders all claims against the government inalienable, alike in law and in equity, for every purpose and between all parties. *Spofford* v. *Kirk,* 97 U. S. 484; *United States* v. *Gillis,* 95 U. S. 407; *Walker* v. *Brown,* 165 U. S. 654; *Bell* v. *Halsell,* 161 U. S. 76.

If this were an action at law by the appellees, as it should be, to recover from the appellant a balance due for their professional services, it could not, perhaps, be successfully contended that section 3477, R. S. U. S., would stand in the way of a recovery. See *Wright* v. *Tebbitts,* 91 U. S. 253.

8. It will be contended, perhaps, that the averment, on information and belief, that the defendants Sanborn and King were partners, will give the court of equity jurisdiction. But, assuming that Sanborn and King were partners, that does not place the complainants in any better position, or give the court jurisdiction. See 5 Encyc. of Pl. and Pr. 483–485.

9. It will be contended that the amended bill is maintainable as a bill for discovery as to the alleged partnership relations. It is not good as a bill for discovery, first, because

it waives answer under oath, and, secondly, because it fails to charge that the complainants are unable to prove the facts sought to be discovered by other testimony than that of the defendants. See *Weed* v. *Smull,* 7 Paige, 573; *Brown* v. *Swann,* 10 Pet. 497; *Plumb* v. *Bateman,* 2 App. D. C. 170.

*Messrs. Douglass & Douglass* and *Mr. Andrew Y. Bradley* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

As the case may come before us again on appeal from a final decree rendered after answer shall have been made and testimony submitted, our conclusions upon the points raised by the demurrer will be stated briefly.

1. The agreement alleged in the bill, substantially to the effect that complainants' fees for services should be satisfied out of the proceeds of defendant's claim in controversy and constitute an interest therein to that extent, created a charge enforceable as an equitable assignment or lien. *Dexter* v. *Gordon,* 11 App. D. C. 60, 65, 66; *Hutchinson* v. *Worthington,* 7 Id. 548; *Fourth St. Bank* v. *Yardly,* 165 U. S. 634, 644; *Walker* v. *Brown,* 165 U. S. 654.

2. The question, whether complainants can maintain a bill as simple contract creditors, without first reducing their demand to judgment and obtaining ineffectual execution thereon, is immaterial. The reasons for the general rule requiring that foundation for an ordinary creditor's bill do not apply, and hence it is not necessary to consider whether such a bill could be maintained under some of the exceptions to that rule recognized in the following cases: *Hardware Co.* v. *Driggs,* 13 App. D. C. 272; *Droop* v. *Ridenour,* 9 App. D. C. 95. The complainants' demand has been liquidated by the award which is the foundation of their bill. This award, regularly made and apparently unimpeachable, is as conclusive of the demand, both in respect of its validity and amount, as the judgment of a court of competent jurisdiction would be. 2 A. & E. Encyc. Law, 794. It is, at

least, sufficient foundation for the enforcement of the equitable lien, heretofore recognized, upon the fund within the jurisdiction of the court.

3. The contention of the appellant, that the equitable lien has been lost because not recognized and included in the award, is without merit. The agreement for arbitration shows that nothing was submitted but the question whether Sanborn was indebted to the complainants, and if so, in what amount. There is nothing in the agreement or the award to indicate that a finding in respect of the lien now claimed was in contemplation. The lien was, therefore, not merged and remains capable of enforcement to the full amount of the sum awarded, upon the same principle that a mortgage lien remains unimpaired after the conversion of the debt which it secures into a judgment at law.

4. The defense, that the agreement constituting the equitable lien or assignment was prohibited by the terms of Sec. 3477, R. S. U. S., is not available to the appellant in this suit.

The United States have no interest in this proceeding, whatever, and it is unnecessary to consider the effect of the statute were the lien or assignment asserted against them. *Price* v. *Forrest,* 173 U. S. 410, 423. In that case, Mr. Justice Harlan, speaking for the court, said: "As this court has said, the object of Congress by section 3477 was to protect the Government, and not the claimant, and to prevent frauds upon the Treasury." *Bailey* v. *U. S.,* 109 U. S. 432; *Hobbs* v. *McLean,* 117 U. S. 567; *Freedman's Savings Co.* v. *Shepherd,* 127 U. S. 494, 506.

There was no purpose to aid those who had claims for money against the United States in disregarding the just demands of their creditors. We perceive nothing in the words or object of the statute that prevents any court of competent jurisdiction as to subject-matter and parties from making such orders as may be necessary or appropriate to prevent one who has a claim for money against the Government from withdrawing the proceeds of such claim from the reach of his creditors; provided such orders do not interfere with the

examination and allowance or rejection of such claim by the proper officers of the Government, nor in any wise obstruct any action that such officers may legally take under the statutes relating to the allowance or payment of claims against the United States." See also *Manning* v. *Ellicott,* 9 App. D. C. 71, 79; *Marble Co.* v. *Burgdorf,* 13 App. D. C. 506, 522.

For the reasons given, the order overruling the demurrer will be affirmed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

*Affirmed.*