418

HELVERING, Commissioner of Internal Revenue v. WARDMAN.

No. 5878.

Court of Appeals of the District of Columbia.

Argued Nov. 9, 1933.

Decided Dec. 11, 1933.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, Arthur H. Fast, J. P. Jackson, F. L. Van Haaften, all of Washington, D. C., for petitioner.

Meredith M. Daubin and Daniel Thew Wright, both of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Petition for review of a decision of the Board of Tax Appeals holding that respondent taxpayer's business, within the meaning of section 229 of the Revenue Act of 1921[1] (c. 136, 42 Stat. 227), had been organized as a corporation within four months after the passage of the act (November 23, 1921); and that, the business of the taxpayer not being organized as a corporation until March 23, 1922, the filing of an individual return by the taxpayer on March 15, 1922, did not constitute an election depriving the taxpayer of the benefit of being taxed as a corporation as provided by section 229.

The material facts as found by the Board are as follows: In September, 1921, the taxpayer, whose business was conducted as a sole proprietorship, decided to incorporate, and employed counsel to effectuate that purpose. On January 1, 1922, taxpayer Wardman and his business associates agreed to organize a corporation under the laws of Virginia "for the purpose of taking over the Wardman business and the Wardman interests, and to avail themselves of the advantage of the internal-revenue laws on the subject of taxation."

On March 20, 1922, articles of incorporation were duly executed by the incorporators. Counsel for the taxpayer submitted the proposed charter to the corporation commission of the state of Virginia, and, on March 22, 1922, the commission returned it, suggesting changes, which were adopted, and the charter was returned to the commission on the same day.

On March 23, 1922, the corporation commission, after finding that the certificate of incorporation presented to it by the incorporators (together with a receipt showing payment of the charter fee required by law) complied with the requirements of law and that the incorporators were entitled to a charter, "ordered that they and their associates and successors be, and they are, hereby made and created a body politic and corporate under and by the name of Wardman Construction Company, Incorporated, * * * with

[1] Section 229 enacted: "That in the case of the organization as a corporation within four months after the passage of this act of any trade or business in which capital is a material income-producing factor, and which was previously owned by a partnership or individual, the net income of such trade or business from January 1, 1921, to the date of such organization may at the option of the individual or partnership be taxed as the net income of a corporation is taxed under Titles II and III; in which event the net income and invested capital of such trade or business shall be computed as if such corporation had been in existence on and after January 1, 1921: * * * *Provided*, That this section shall *not apply to any trade or business*, the net income of which for the taxable year 1921 was less than 20 per centum of its invested capital for such year. * * * *"

all the powers and privileges conferred and subject to all the conditions and restrictions imposed by law." On the same day the charter was duly recorded in the office of the secretary of the commonwealth of Virginia, and certified to the clerk of the corporation court of Alexander, Va.

The initial meeting of the stockholders of the corporation was held on March 30, 1922. The assets and liabilities of Harry Wardman were taken over as of January 1, 1922; but the itemized schedules showing such assets, which schedules were required by the laws of Virginia in order to protect the incorporators from individual liability, were filed in August, 1922.

On March 15, 1922, Wardman filed an individual income tax return for 1921, in which he included the net earnings of his construction and real estate business, and the tax thereon was paid in quarterly installments without protest.

On November 20, 1924, the taxpayer filed a corporation income and profits tax return on behalf of the Wardman Construction Company for the calendar year 1921 disclosing the income of the business of the taxpayer for that year. On the same date the taxpayer filed an individual tax return for the year 1921, disclosing the personal income of the taxpayer for that year. A claim for refund was also filed on that date asserting that the amended returns filed pursuant to section 229 of the 1921 Act revealed an overassessment of taxes for 1921.

The Commissioner held that the corporation was not organized within four months after the passage of the 1921 Act; and that, even if it was organized in time, the taxpayer, by filing his individual return on March 15, 1922, and paying the tax thereon in quarterly installments without protest, had thereby exercised the option provided under section 229, and therefore was not entitled to the benefits of that section.

The Board held that the business was organized as a corporation on March 23, 1922, within the meaning of section 229 of the 1921 Act, and that on March 15, 1922, when taxpayer filed his individual return, he had no election available because there was no corporation then in existence entitling him to an election.

The government concedes that capital was a material income-producing factor in the taxpayer's business both before and after incorporation, and it appears that the net income of the business for 1921 was greater than 20 per cent. of its invested capital for

such year. Counsel for the government also admit that, if the corporation was organized on March 23, 1922, it was timely organized.

Counsel for petitioner in their brief frankly state that the purpose of the statute in question (section 229) "was to relieve individuals conducting a business in which capital was a material income-producing factor from the surtax rates applicable to individuals and to make available to them the more favorable corporate rates, the excess-profits taxes on corporations based upon invested capital having been materially reduced with the 1921 act."

The conference report on the revenue bill of 1921[2] (H. of R. Rep. No. 486, 67th Cong., 1st sess., p. 32, Senate amendment no. 354) states that the purpose of this section was to grant to individuals and partnerships the privilege, if exercised within four months, "of organizing their trade or business as a corporation and paying taxes as if the corporation had been in existence from January 1, 1921, to the date of organization." In other words, the purpose of the statute was to do away with the unjust discrimination against individuals. It was a remedial measure and should be "construed liberally in favor of the taxpayer." Bowers v. New York & Albany Lighterage Co., 273 U. S. 346, 349, 47 S. Ct. 389, 71 L. Ed. 676; United States v. Updike, 281 U. S. 489, 496, 50 S. Ct. 367, 369, 74 L. Ed. 984; Bonwit Teller & Co. v. United States, 283 U. S. 258, 263, 51 S. Ct. 395, 75 L. Ed. 1018.

It is not questioned that the Wardman Construction Company ultimately became a legally organized corporation in 1922, the contention being that it was not completely organized within the four months' period. To reach this conclusion, we would be obliged to ignore the foregoing rule of construction and ignore the provisions of the Virginia law relating to the formation of corporations. Section 3850 of the Virginia Code of 1924 provides that the certificate of incorporation shall state the purpose for which the corporation was formed; the maximum and minimum amount of its capital stock, the division of its shares, and a description of the different classes of stock, if any, and the terms on which such different classes are created; the duration of the corporation; the names and residences of its officers and directors who, "unless sooner changed by the

---

[2] Section 229 was a Senate amendment to H.R. 8245, 67th Cong., revenue bill of 1921 (Cong. Record, vol. 61, pt. 7, 67th Cong., 1st sess., pp. 7478-7480), and appeared as Senate Amendment No. 354 in the bill as it went to conference.

420

stockholders, are for the first year to manage the affairs of the corporation." Under section 3851 of the Virginia Code, "as soon as the charter shall have been lodged for recordation in the office of the secretary of the Commonwealth, the persons who signed and acknowledged said certificate, and such other persons as may be associated with them according to the provisions of law, or of their charter and their successors, shall be a body, politic and corporate, by the name set forth in the said certificate, with the powers and upon the terms set forth therein, so far as not in conflict with law; and in addition shall have all the general powers and be subject to all general restrictions and liabilities conferred and imposed by this chapter and by the general laws of this State applicable thereto."

So far as the commonwealth of Virginia was concerned, the structural formation of the corporation was completed with the recordation of the charter in the office of the secretary of the commonwealth. Thereafter the officers and directors named in the certificate were empowered to manage the affairs and business of the corporation for the first year of its existence, unless sooner changed by the stockholders. In other words, all conditions precedent had been complied with. The legal entity had come into existence, capable of suing and being sued, and the directors named in the certificate were empowered to manage the affairs and business of the corporation for the first year of its existence. Certain internal proceedings, such as the first meeting of the stockholders and directors, filing of statements with the state corporation commission showing the basis or financial plan to be adopted by the corporation upon the issuance of its stocks or bonds, and the formal taking over of the business and assets by the officers and directors selected by the stockholders, constituted, in our view, conditions subsequent, a noncompliance with which, while it may give the state a right to maintain proceedings to forfeit the charter, does not, in the absence of such proceedings, in any way affect the legal existence of the corporation. Wells Company v. Gastonia Cotton Mfg. Co., 198 U. S. 177, 25 S. Ct. 640, 49 L. Ed. 1003.

We are of the view that the Wardman Construction Company was on March 23, 1922, incorporated within the spirit and purpose of section 229 of the 1921 Act and, therefore, within its meaning.

■ On the question of election, little need be said, for when the taxpayer filed his individual return on March 15, 1922, he had no election, since the corporation had not then been formed. The government contends that it was not formed until subsequent to March 23, 1922. Since it was formed for the express purpose of taking advantage of section 229, we do not think it can be said that the taxpayer intended to waive or in fact did waive the benefit of that section.

Decision affirmed.

Affirmed.