**BARBER v. VINSON, Secretary of the Treasury, et al.**

No. 9001.

United States Court of Appeals
District of Columbia.

Argued Nov. 15, 1945.

Decided Jan. 21, 1946.

Mr. Theodore B. Benson, of Washington, D.C., with whom Mr. Seth W. Richardson, of Washington, D.C., was on the brief, for appellant.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Charles B. Murray and Daniel B. Maher, Assistant United States Attorneys, all of Washington, D. C., were on the brief, for appellees Fred M. Vinson and William A. Julian.

Mr. Charles F. Wilson, of Washington, D. C., for appellee William A. Parker.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

The appellant here, plaintiff below, sought an injunction and an accounting in the District Court. His complaint was directed toward preventing the Secretary of the Treasury and the Treasurer of the United States from sending, and William A. Parker, one of the appellees, from requesting or receiving checks in settlement of a claim award being paid under the provisions of the Mexican Claims Act of 1942.[1]

Appellant, an attorney, was a member of a law firm employed by appellee Parker in 1924 for the purpose of prosecuting claims before the General Claims Commission. In 1925 the firm was dissolved and appellant succeeded to his predecessor's rights to receive compensation from Parker for this service. The contract of employment included a power of attorney "to receive the moneys on said claim and to give receipts and acquittances therefor," as well as a provision for a 25 percent fee on any amounts recovered.

---

[1] 56 Stat. 1058, 22 U.S.C. § 661 et seq., 22 U.S.C.A. § 661 et seq.

In 1926 the General Claims Commission rendered an award to Parker in the amount of $19,695.83. This award, plus interest, was certified to the Secretary of the Treasury and in accordance with the provisions of the Mexican Claims Act of 1942, 30 per cent of the principal, less 5 per cent for expenses, was paid directly to appellee Parker, a resident of Texas. It does not appear that appellant has received anything in payment for his services.

The court below granted appellee Parker's motion to vacate the service of process and quash the subpoena on the grounds that he had not been served in the District of Columbia and that no lien existed on any real or personal property within the District. The motion of the Secretary and the Treasurer to dismiss was also granted.

Appellant's major contentions are: (1) That the checks "to be issued" in payment of this award, and the fund from which they will be paid are "personal property" within this jurisdiction upon which appellant has a lien and such as will support service by publication on appellee Parker, a nonresident;[2] (2) that the terms of the 1942 Act do not bar his lien or preclude having the checks, when drawn, delivered to him or to a receiver pursuant to his previously acquired power of attorney. He does not contend that he has the right to cash any checks thus withheld from Parker.

The government officials and appellee Parker take the position that Parker is an indispensable party to this action and that under the laws of the District of Columbia service by publication is not valid; there being no property owned by Parker within the jurisdiction, and no lien attaching to any part of the Mexican Claims Fund. More significant, we think, is the contention of the Secretary and the Treasurer that the

terms of the 1942 Act preclude the Secretary of the Treasury from making payments in the manner requested by the appellant, and bar the court from compelling payment to him. The applicable provisions of the Act read in part as follows:[3]

"Section 9(b). Such payments shall be made only to the person or persons on behalf of whom the award of appraisal is made, except that * * *

"(6) In the case of an assignment of an award or an appraisal, or any part thereof, which is made in writing and duly acknowledged and filed, after such award or appraisal is certified to the Secretary of the Treasury, payment may, in the discretion of the Secretary of the Treasury, be made to the assignee, as his interest may appear."

■ We conclude that the statute empowering the Secretary of the Treasury to make these payments is controlling against the appellant. The language is a clear limitation, with specified exceptions, on the Secretary's power to pay to other than the awardee. Appellant has not qualified to receive direct payment from the Treasury. It will be observed that even if we were to treat appellant's power of attorney as an assignment, and even if it had been made after the award, still the Secretary of the Treasury could, in his discretion, refuse to honor it. There might then arise a question of the possible abuse of discretionary power, but that question is not posed in this case for the obvious reason that the appellant has not overcome the first obstacle, namely, securing an assignment after the award was made.

The appellant urges that it is not the statute, but rather, a Treasury Regulation under it which bars the recognition of his power of attorney. In the light of Section

---

[2] § 13—108, D.C.Code, 1940, provides: "Publication may be substituted for personal service of process upon any defendant who can not be found and who is shown by affidavit to be a nonresident * * * in suits for * * * the enforcement of mechanics' liens, and all other liens against real or personal property within the District, * * *."

[3] It should be noted that section 5 (c) of the Act of 1942 provides expressly for the collection of attorney's fees. The procedure is set forth as follows: "In connection with any claim decided by the Commission pursuant to section 661–672 of this title in which an award is made,

the Commission may, upon the written request of the claimant or any attorney heretofore or hereafter employed by such claimant, determine and apportion the just and reasonable attorneys' fees for services rendered with respect to such claim, but the total amount of the fees so determined in any case shall not exceed 10 per centum of the amount of the award, unless in special circumstances the Commission shall find that a larger fee is just and reasonable. Any fees so determined shall be entered as a part of such award, and payment thereof shall be made by the Secretary of the Treasury."

132

9(b) (6), supra, this position is clearly untenable. The Treasury Regulation is no more than a delineation of the law in this regard.

In our view the terms of the Mexican Claims Act of 1942 constitute a complete bar to the appellant in this situation. The prohibition in the instant case goes directly to the payment of process. It seems clear that the Congress intended that this legislation should bar this very type of "collection litigation" against the officers of the Executive branch. Appellant contends that even though he cannot claim the right to cash checks drawn to Parker, he should be permitted to acquire custody of them under the statute. This, we believe, is an attempt to make an unwarranted refinement of the word "payment." We do not feel that we would have the right to negative what we regard as the plain meaning of the act by embracing the fine distinction of the appellant's argument.

In these circumstances we find no occasion to decide the question of whether or not there was "property" within the District of Columbia. For the statute negatives any "lien." The appellant cannot enforce his claim by way of injunction against the Treasury officials, nor is he entitled to avoid the statute through the appointment of a receiver who would stand between the Treasury and Parker. Even if we were to hold that at one time or another Parker had "property" within the District which might be subject to lien, it could be of little comfort to appellant for the reason that the statute precludes his reaching it in the manner attempted. We do not agree with the appellant that his case is like that of Wardman v. Leopold, 66 App.D.C. 111, 85 F.2d 277, 106 A.L.R. 1487. In the Wardman case the only statutory bar asserted was that which forbade the assignment of claims against the government in the absence of certain formalities, and an equitable lien was held enforceable. Similarly, the other cases relied upon by the appellant are not controlling on what we regard the determinative issue in this case.[4] The plain fact is that none of them were decided in the face of the claims statute now before the court.

Affirmed.

[4] Regarding what constitutes "property" see: Morgenthau et al. v. Fidelity & Deposit Co. of Maryland, 68 App.D.C.

163, 94 F.2d 632; American-Mexican Claims Bureau v. Morgenthau et al., D. C., 26 F.Supp. 904.