HARTFORD CHARGA–PLATE ASSOCI-
ATES, Incorporated, Plaintiff-
Appellant,

v.

YOUTH CENTRE–CINDERELLA
STORES, Inc., Defendant-
Respondent.

No. 215, Docket 22994.

United States Court of Appeals
Second Circuit.

Argued April 14, 1954.

Decided Sept. 17, 1954.

Hector M. Holmes, Boston, Mass.
(Fish, Richardson & Neave and S. Lang
Makrauer, Boston, Mass., and Aaron
Nassau, Hartford, Conn., on the brief),
for plaintiff-appellant.

M. J. Blumenfeld, Hartford, Conn.
(Pelgrift, Blumenfeld & Nair and Rob-
ert E. Cohn, Hartford, Conn., on the
brief), for defendant-appellee.

Before CLARK, HINCKS, and HAR-
LAN, Circuit Judges.

CLARK, Circuit Judge.

This action, seeking an injunction for alleged unfair competition, was originally brought in the state court, but was removed by defendant to the court below because of the diverse citizenship of the parties. The gist of the action is a

claimed improper use by defendant in its addressing machines of identification plates issued by plaintiff to customers of its six member stores. Since the claim is not based upon any of the more usual forms of unfair competition, it may be convenient first to point out what we do not have before us on this appeal from its dismissal.

As is conceded, there is no claim of misrepresentation of plaintiff's goods or of palming-off defendant's goods as plaintiff's. There is no claim of appropriation of any concepts or ideas of plaintiff or of confusion of goods; nor does plaintiff contend that plateholders were under contract as to use of the plates, or seek relief on the ground of inducement of breach of contract. No infringement of a patent is claimed; in fact it appears that plaintiff's system and that which defendant used in its Springfield store, and made adaptable in its Hartford store to plaintiff's device by eliminating from the addressers the pins gearing them to certain credit notches on the plates, were made by different and competing manufacturers. The only approach to any of this was an original contention by plaintiff's manufacturer, the Farrington Manufacturing Company, that defendant was violating its registered trade-mark "Charga-Plate." But defendant thereafter instructed its clerks to use some other term, e. g., "charge plate" or "credit plate," and no claim of trade-mark infringement is before us.

The contention has to be, therefore, that defendant has wrongfully appropriated something of value from plaintiff and is taking a "free ride" as against competitors. We should therefore scan carefully what it is that defendant actually does. What happens is that when a customer seeks credit for his purchase at defendant's store and produces his "Charga-Plate" upon the clerk's inquiry if he has a credit plate, the clerk then puts the proffered plate through the addresser—without obstructing pins—which stamps the customer's name and address upon the sales slip. There is surely nothing wrong—in fact it is usual, as we all know—for a store to seek information as to credit extended by other stores; the only possible claim of actionable wrong is by defendant's use in its own addressers of plaintiff's plates. And absent patent or contract bar as against defendant, there surely is nothing wrong in such use of itself. The claim must therefore be for benefits conferred, as to which the possibilities seem limited to three: credit information as to the customer, prestige from seeming to be in plaintiff's favored group, and ease and convenience of making and posting the charge statement. No other is suggested or apparent.

As to the first, the court refused to find a use of the plates to obtain the benefit of the credit rating efforts of plaintiff's members. The evidence produced involved purchases of very small amount or value; and it appeared that the clerks had discretion to grant credit freely for purchases up to $5, and up to $15 if the customer did not appear in the store's "negative file" of proven bad risks—and that these limits might in practice be increased or doubled in times of press of business. Even had the evidence been more favorable to the plaintiff, it is hard to see any misappropriation here in view of the usual sources of credit information and the lack of secrecy as to them. A showing of a bill from another store would disclose as much. Or reference to an ordinary telephone directory! Defendant was of course free to establish its own requirements, or even absence of any requirement, for granting of credit to its customers.

On the second matter, the court below was willing to grant, "although it is doubtful whether it can be found from the evidence, that a certain amount of prestige attaches to membership in plaintiff's group," but went on to say: "Defendant was willing and eager to join plaintiff and share its costs, but was turned down, as was Lord and Taylor." 116 F.Supp. at page 149. That is an answer on the equities; but perhaps more legally pertinent is the fact that defendant did not misrepresent the situa-

tion or make any claims of prestige to which it was not entitled. As appears from this record—if it is not generally known—these credit plates are in wide use in many places; and the facts do not afford basis for any claim of particular credit from their use. If—as was not proven—some customers drew deductions which were unjustified in fact, this would not show an actionable wrong on the part of defendant. Obviously if or when any misrepresentation by defendant can be shown, then plaintiff—or its members as may be more appropriate— will have an adequate remedy, just as they would on a showing of patent or copyright infringement. The same principles apply with respect to plaintiff's contention that defendant is now making wrongful use in its advertising of Judge Smith's favorable decision below. This post-decision advertising is of course not before us on the record. But were we in a position to rule upon the contention, we should need to say again that defendant, so long as it states them truly, is entitled to present the facts upon which it bases its grants of credit or the methods used in billing its customers and, particularly because of the challenge to its right, to call attention to the court decision permitting it to do so. Only if or when it misrepresents can it be held liable.

The claim must therefore rest upon the ease and facility in account billing resulting from the use by defendant of plaintiff's plates. We agree with the court below in finding this an inadequate basis for banning defendant from doing what would otherwise be quite permissible. If defendant wants to make short cuts in its bookkeeping, to its own advantage, by using what has been freely distributed to the general public, there seems neither legal nor equitable basis for finding that it has done wrong, any more than had it copied names and addresses from a telephone directory, for example. In the leading and often-cited case of RCA Mfg. Co. v. Whiteman, 2 Cir., 114 F.2d 86, certiorari denied 311 U.S. 712, 61 S.Ct. 393, 85 L.Ed. 463—re-affirmed as recently as Granz v. Harris, 2 Cir., 198 F.2d 585, 587—the court, per L. Hand, J., refused to hold that records produced by Paul Whiteman and his orchestra could be "clogged with a servitude" so that their broadcasting by a broadcasting corporation could be enjoined. Judge Hand went on to say: "Restrictions upon the uses of chattels once absolutely sold are at least *prima facie* invalid; they must be justified for some exceptional reason, normally they are 'repugnant' to the transfer of title. If 'the common-law property' in the rendition be gone, then anyone may copy it who chances to hear it, and may use it as he pleases." RCA Mfg. Co. v. Whiteman, supra, 2 Cir., 114 F.2d at pages 88, 89. Here likewise the plaintiff, having relinquished its plates freely to its customers, could no longer burden them with an inconsistent servitude passing with their transfer and binding upon strangers. Plaintiff's attempted distinctions that in the Whiteman case the records had been sold and were moving in commerce after the sale and that there common-law copyright rights had been relinquished by publication are clearly inadequate to indicate "some exceptional reason" for the servitude here. For plaintiff's belated attempt to preserve ownership and restriction upon the use of the plates shows no differentiation of practical substance or significance in this setting from the situation of admitted sale or gift of the plates. And, as we have seen, no violation of patent or trade-mark is here now suggested. There seems in fact more reason to uphold a servitude—if ever—in the Whiteman case, where the real subject matter was an artistic performance by long trained and skilled musicians, than here, where involved is only a bookkeeping convenience.

Plaintiff has no exact precedent in its favor, but relies on the analogy of International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293, where the Court held International guilty of unfair competition in that it misappropriated and sold

as its own the news accumulated at great expense by the A. P. Here there was no such competition, and, indeed, no competition in selling at all, between the plaintiff and the defendant. True, defendant was in retail competition with plaintiff's members; but it was not appropriating and selling as its own the very products vended by its competitors. Defendant was not in competition in selling either a credit system or its paraphernalia or credit information. In fact, as freely conceded, defendant was at liberty to duplicate and use a system like plaintiff's; the only attempted ban was by way of servitude upon a use otherwise freely possible of plaintiff's plates in defendant's addresser. We do not think the precedent will therefore bear the burden thus laid upon it, even if we do not follow the repeated trend in this court, noted as lately as G. Ricordi & Co. v. Haendler, 2 Cir., 194 F.2d 914, to confine that decision strictly to the facts then at bar.[1]

The other and earlier cases cited by plaintiff appear to have even less pertinence. In the cases involving the refilling of Prest-O-Lite tanks with acety-

lene gas by others without removing the original label and trade-mark, it was this misuse of a business symbol which alone was held unfair, the defendants being left "at liberty to establish and conduct an independent and competitive system of service." Searchlight Gas Co. v. Prest-O-Lite Co., 7 Cir., 215 F. 692, 695, with companion cases cited at pages 693, 694; Prest-O-Lite Co. v. Heiden, 8 Cir., 219 F. 845, L.R.A.1915F, 945. So in the trading-stamp cases, Sperry & Hutchinson Co. v. Mechanics' Clothing Co., C.C.R.I., 135 F. 833; Sperry & Hutchinson Co. v. Temple, C.C.Mass., 137 F. 992, plaintiff had agreed with the merchants purchasing products from it to honor with premiums its trading stamps issued by the merchants to their customers; but defendant, a competing merchant, attempted a direct interference with this special contract by obtaining a supply of such stamps from collectors and passing them on to its own customers. Such a deliberate fraud was properly enjoined. See Harvey Hubbell, Inc. v. General Electric Co., D.C.S.D.N. Y., 262 F. 155, 161.

Affirmed.

1. See Judge L. Hand's discussion of the International News case in RCA Mfg. Co. v. Whiteman, supra, 2 Cir., 114 F.2d 86, 90: "That much discussed decision really held no more than that a western newspaper might not take advantage of the fact that it was published some hours later than papers in the east, to copy the news which the plaintiff had collected at its own expense. In spite of some general language it must be confined to that situation (Cheney Bros. v. Doris Silk Corp., 2 Cir., 35 F.2d 279, 281); certainly it cannot be used as a cover to prevent competitors from ever appropriating the results of the industry, skill, and expense of others. 'Property' is a historical concept; one may bestow much labor and ingenuity which inures only to the public benefit; 'ideas', for instance, though upon them all civilization is built, may never be 'owned.' The law does not protect them at all, but only their expression; and how far that protection shall go is a question of more or less; an author has no 'natural right' even so far, and is not free to make his own terms with the public. In the case at bar if Whiteman and RCA Manufacturing Company, Inc., cannot bring themselves within the law of common-law copyright [or, as we might here add, trade-mark], there is nothing to justify a priori any continuance of their control over the activities of the public to which they have seen fit to dedicate the larger part of their contribution."

Of course here we are not dealing with anything so nearly approaching "property" as an author's expression of ideas. See also Millinery Creators' Guild v. FTC, 2 Cir., 109 F.2d 175, 177, affirmed 312 U.S. 469, 61 S.Ct. 708, 85 L.Ed. 955.